Electronically Filed
Intermediate Court of Appeals
CAAP-13-0005434
22-FEB-2018
08:18 AM

NO. CAAP-13-0005434 and CAAP-13-0005679

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CRIMINAL NO. 13-1-0103
STATE OF HAWAI'I, Plaintiff-Appellee,
v.
CATHERINE C. RUSSELL, Defendant-Appellant

CRIMINAL NO. 13-1-0346
STATE OF HAWAI'I, Plaintiff-Appellee,
v.
BLADE MICHAEL WALSH, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Ginoza, and Chan, JJ.)

Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant Catherine C. Russell (Russell) and Defendant-Appellant Blade Michael Walsh (Walsh) by complaint, in separate cases, with Obstructing Government Operations, in violation of Hawaii Revised Statutes (HRS) § 710-1010(1)(a) (2014).[1] The charges against Russell and Walsh stemmed from their actions in

---

[1] HRS § 710-1010(1)(a) provides:

(1) A person commits the offense of obstructing government operations if, by using or threatening to use violence, force, or physical interference or obstacle, the person intentionally obstructs, impairs, or hinders:

(a) The performance of a governmental function by a public servant acting under color of the public servant's official authority[.]

chaining themselves and a third person together and refusing to leave a tent that had been designated for removal pursuant to the City and County of Honolulu's Stored Property Ordinance, Revised Ordinances of Honolulu (ROH) Chapter 29, Article 19.[2] Russell's and Walsh's cases were consolidated for a jury trial. The jury found Russell and Walsh guilty as charged. The Circuit Court of the First Circuit (Circuit Court)[3] sentenced Russell to sixty days of imprisonment and Walsh to forty-five days of imprisonment. Russell and Walsh separately appealed from their respective Judgments of Conviction and Sentence, and we consolidated their appeals.

On appeal, Russell contends that the Circuit Court: (1) erred in refusing to admit a copy of the Stored Property Ordinance into evidence; (2) erred in refusing her request to instruct the jury on the choice-of-evils defense; and (3) abused its discretion in denying her motion for a mistrial, which was based on alleged prosecutorial misconduct for remarks made by the prosecutor during closing argument.

Walsh contends that: (1) the Circuit Court erred in denying his pretrial motion to dismiss; (2) the Circuit Court

---

[2] ROH § 29-19.3 (1990 & Supp. No. 20, 1-2012) provides:

(a) No person shall store personal property on public property. All stored personal property may be impounded by the city. In the event personal property placed on public property interferes with the safe or orderly management of the premises or poses a threat to the health, safety, or welfare of the public, it may be impounded at any time by the city.

(b) Personal property placed on public property shall be deemed to be stored personal property if it has not been removed from public property within twenty-four hours of service of the written notice required by Section 29-19.4, which requires such removal, and the city may cause the removal and impoundment of such stored personal property; provided that moving the personal property to another location on public property shall not be considered to be removing the personal property from public property; and provided further that this section shall not apply to personal property that, pursuant to statute, ordinance, permit, regulation, or other authorization by the city or state, is placed on property that is owned or controlled by the city.

[3] The Honorable Patrick W. Border presided.

2

erred in preventing him from introducing relevant state of mind evidence at trial; (3) there was insufficient evidence to support his conviction; (4) because the evidence was insufficient, reprosecution should be barred by double jeopardy; (5) the Circuit Court erred in failing to conduct individual voir dire of the jury panel; (6) the jury instructions were deficient for failing to include a specific unanimity instruction; and (7) the prosecutor's remarks during closing argument constituted prosecutorial misconduct and the Circuit Court's curative instruction was defective.

As explained below, we affirm Russell's conviction, and we vacate Walsh's conviction and remand Walsh's case for a new trial.

BACKGROUND

I.

The Stored Property Ordinance prohibits the storage of personal property on public property, and it establishes procedures for providing 24-hour notice that stored personal property will be impounded if not removed, impoundment and storage of property that is not removed, and repossession of impounded property by its owner or disposal of such property. ROH Chapter 29, Article 19.

In this case, on the morning of September 25, 2012, employees of the City and County of Honolulu (City) affixed removal notices to personal property deemed to be improperly stored in Thomas Square Park, including a red tent owned by Russell. The removal notice on Russell's tent stated that "PERSONAL PROPERTY STORED ON PUBLIC PROPERTY SHALL BE IMPOUNDED IF NOT REMOVED WITHIN 24 HOURS."

When they arrived at Thomas Square Park the following day, City workers began the process of impounding property, which had been tagged with removal notices the previous day, that had not been removed. The removal notice that had been posted on Russell's tent was gone, and a sign reading "NO TRESPASSING" had been posted on the front of the tent. When City enforcement

3

personnel approached the tent, they found that its zipper was closed and secured with a padlock from the outside.

After the padlock was removed and the tent's zipper was being opened, a voice from inside the tent stated "No trespassing. I do not consent to your entry." Once the tent's door was opened, the City workers discovered three people inside the tent: Russell, Walsh, and another woman. The three had used chains covered by PVC pipes to bind themselves together and to a wooden pallet on the floor of the tent. The use of the PVC pipes made it difficult to safely cut and remove the chains.[4]

City Housing Coordinator, Trish Morikawa (Morikawa), who was present to coordinate the various agencies involved in the Stored Property Ordinance enforcement process, approached the tent and asked Russell, Walsh, and the other occupant three times to vacate the tent so that the enforcement action could proceed. Morikawa recognized Russell and Walsh from past encounters at Thomas Square Park. Morikawa told Russell and Walsh:

> I'm going to ask you folks three times nicely. We're doing stored property ordinance enforcement, so we're asking you to get out of the tent so that we can conduct the enforcement. If you don't leave the tent, you're gonna be arrested for obstructing governmental operations.

During Morikawa's second request for Russell and Walsh to exit the tent, Russell responded "and I'm going to tell you no." Russell also told Morikawa, "You're violating the constitution, and you're tormenting the houseless population, and for that, you are despicable[.]" During Morikawa's third request, Russell and Walsh began chanting "Fight, fight, fight. Housing is a human right." Neither Russell nor Walsh attempted to exit the tent or remove the apparatus binding them together in response to Morikawa's requests, and Morikawa turned the matter over to the police.

---

[4] This apparatus/technique was referred to as the "sleeping dragon" at trial.

Corporal Kevin Nakano (Nakano) of the Honolulu Police Department (HPD) approached Russell and Walsh and asked them to exit the tent voluntarily, but they refused, and Russell responded by stating her belief that the City's actions pursuant to the Stored Property Ordinance were unconstitutional. When Nakano again asked Russell and Walsh if they would cooperate, both refused to move from the tent or remove the apparatus binding them together.

An ambulance, the fire department, and other HPD officers were called to the scene to assess the situation and determine whether the apparatus could be removed without causing injury. The fire department determined that a special team would need to be assembled to safely remove the apparatus. The HPD also concluded that it would be "too intrusive or dangerous to try and cut the device off" and "decided to pull [their] units back." Because Russell, Walsh, and the third person remained in the tent bound together with the apparatus, the enforcement crew was unable to impound the tent. The crew was delayed at Thomas Square Park for about an hour by the actions of Russell and Walsh, and the crew left for another site without impounding Russell's tent. If the tent had been unoccupied, it would have only taken "[a] couple of minutes" for the crew to impound it.

II.

Both Russell and Walsh testified at trial. Russell testified that she moved to Hawaiʻi from Chicago in June of 2012, expecting to get a job, which fell through. While in Chicago, she participated in Occupy Chicago protests. Upon arriving in Honolulu, Russell associated with the De-Occupy Honolulu movement and began living in Thomas Square Park. Russell testified that during prior Stored Property Ordinance enforcement actions, City employees had seized her tent and property in her tent without complying with the requirements of the Stored Property Ordinance. She also experienced difficulty reclaiming her property that had been impounded and had not been able to recover all of such property. Russell said that during prior enforcement actions,

5

the City had improperly discarded property and that she knew of people who had lost property removed by the City.

Russell testified that as a result of these prior experiences, she was afraid she would lose her tent and other personal property if she allowed them to be taken by the City workers on the day in question. She stated that her goal on that day was not to obstruct the City enforcement crew, but to protect her property.

Walsh testified that he was affiliated with the De-Occupy Honolulu movement and occasionally slept overnight at Thomas Square Park. Walsh stated that he decided to stay with Russell in her tent and refused to leave in order to protest homelessness and help Russell protect her property.

DISCUSSION

I.

We first address the points of error raised by Russell in her appeal.

A.

Russell contends that the Circuit Court erred in refusing to admit a copy of the Stored Property Ordinance into evidence as an exhibit. We conclude that Russell is not entitled to relief based on this claim.

During trial, Russell sought to enter a copy of the Stored Property Ordinance into evidence. The Circuit Court denied this request, stating that the exhibit "creates an issue of law" and that the jury's role was to decide facts and not to interpret the law.[5] Russell sought the admission of the Stored Property Ordinance to show that the City was not complying with the requirements of the ordinance for impounding and storing property. She contends that the admission of the ordinance would

_____

[5] The State objected to the introduction of the Stored Property Ordinance as an exhibit when offered by Russell even though the State itself had earlier moved to introduce the Stored Property Ordinance as an exhibit. The Circuit Court also denied the State's request to introduce the ordinance as an exhibit.

6

have supported her claim that the reason she refused to leave her tent was to protect her property because she knew from prior experience of the City's noncompliance with the ordinance. Russell argues that the Circuit Court erred in refusing to admit the ordinance as evidence because it was relevant to her state of mind and that her interpretation of the ordinance was relevant to her mistake of fact defense.

At the outset, we note that the charged offense of Obstructing Government Operations does not require proof that the government operations being obstructed were lawful. See State v. Line, 121 Hawai'i 74, 82, 214 P.3d 613, 621 (2009) ("[C]ontrary to Petitioner's argument, it would appear that it is not required that a government action be only lawful for a violation of HRS § 710-1010 to occur."). In concluding that obstruction of unlawful government operations may violate HRS § 710-1010, the Hawai'i Supreme Court cited the commentary to the analogous Model Penal Code provision which "specifies that an actor will be liable for obstruction even if the government function involved is *unlawful*." Id. (emphasis in original) (citing Model Penal Code & Commentaries, Part II § 242.1 (Comment 7), American Law Institute (1980).

Assuming that the Stored Property Ordinance was arguably relevant to Russell's state of mind, we conclude that the Circuit Court did not abuse its discretion in refusing to admit it.[6] Russell was permitted to testify that she believed, based on her prior experiences, that City workers were violating the ordinance in a manner which resulted in the improper loss or destruction of property seized. Thus, the introduction of the ordinance was not necessary for Russell to present her claim that her actions in refusing to leave her tent were motivated by and done with the goal of protecting her property, and not with the intent to obstruct, impair, or hinder the enforcement of the

---

[6] Russell does not explain why the introduction of the Stored Property Ordinance was relevant to a mistake of fact defense. Her misinterpretation of the ordinance would have been a mistake of law, not a mistake of fact.

ordinance by City workers. As the Circuit Court noted, the role of the jury is to find facts and not to interpret the law. The Circuit Court could reasonably have determined that the probative value of introducing the ordinance as an exhibit was substantially outweighed by the danger of confusion of the issues or misleading the jury. See Hawaii Rules of Evidence (HRE) Rule 403 (2016).

In any event, we conclude that any error in the Circuit Court's failure to admit the ordinance was harmless. The State presented compelling evidence of Russell's guilt. There was undisputed evidence that on the previous day, the City had posted a removal notice on the tent, which warned that the tent would be impounded if not removed within 24 hours. The next day, the notice had been removed and replaced with a no trespassing sign; a padlock had been placed on the zipper that opened the tent; and Russell, Walsh, and another person were inside bound together with an apparatus consisting of PVC pipes and chains. The State introduced a videotape which captured the City's multiple requests to Russell to leave the tent and Russell's persistent refusal. The videotape showed Russell, Walsh, and the third person sitting bound together in Russell's tent; City Housing Coordinator Morikawa informing Russell that the City workers were there to enforce the Stored Property Ordinance and asking Russell three times to leave the tent so the workers could proceed with their enforcement actions; and Russell's responses which demonstrated her deliberate refusal to leave the tent. The videotape also showed HPD Corporal Nakano's efforts to have Russell leave the tent voluntarily, and Russell's refusal. The State presented undisputed evidence that Russell's actions delayed and prevented City workers from impounding her tent, and that the City workers left Thomas Square Park without impounding the tent.

Russell testified that her goal was to protect her property, and not to interfere with the government's operations. However, instead of removing her property after the 24-hour

8

removal notice was posted on her tent, Russell kept her property at Thomas Square Park, and her property was still there when the City workers returned the following day. Moreover, it is clear that a motive or desire by Russell to protect her property would not negate, or even be incompatible with, an intent to obstruct government operations. Russell testified that based on her prior experiences, she was afraid that her property would be lost or destroyed if she allowed it to be impounded by the City workers. Thus, obstructing the City workers from impounding her tent was the means by which she sought to protect her property. In other words, Russell's goal of protecting her property was fully consistent with an intent to obstruct, impair, or hinder the City workers from performing their enforcement activities.

Given the strength of the State's evidence, we conclude that there is no reasonable possibility that any error in refusing to admit the Stored Property Ordinance as an exhibit affected the outcome of Russell's case.

B.

Russell contends that the Circuit Court erred in refusing Russell's request to instruct the jury on the choice-of-evils defense. We disagree. Russell asserts that the "evil" she sought to prevent by her conduct was the "taking of her property by [City] employees."

The choice-of-evils defense is set forth in HRS § 703-302, which provides:

> (1) Conduct which the actor believes to be necessary to avoid an imminent harm or evil to the actor or to another is justifiable provided that:
>
> (a)  The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;
>
> (b)  Neither the Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and
>
> (c)  A legislative purpose to exclude the justification claimed does not otherwise plainly appear.

9

In State v Jim, 105 Hawai'i 319, 332, 97 P.3d 395, 408 (App. 2004), this court held, under circumstances analogous to this case, that there was no basis for a choice-of-evils instruction for defendants charged with obstructing government operations, in violation of HRS § 710-1010(1)(a). In Jim, a county work crew dug a hole to locate an unauthorized connection that was diverting water from the main water line. Jim, 105 Hawai'i at 322-23, 97 P.3d at 398-99. The defendants entered the hole and sat in it, thereby preventing the crew from proceeding with their work. Id. at 323, 97 P.3d at 399. The defendants claimed that the county had been illegally removing water from Hawaiian home lands and that they entered the hole to protest the county's actions. Id. at 323-28, 97 P.3d at 399-404. This court held that: (1) the harm or evil sought to be avoided by the defendants' conduct was not greater than that sought to be prevented by the law defining the charged HRS § 710-1010(1)(a) offense; and (2) "a legislative purpose to exclude the justification claimed plainly appears." Id. at 332, 97 P.3d at 408. Based on Jim, we conclude that the Circuit Court properly denied the choice-of-evils instruction.

Moreover, we conclude that Russell failed to come forward with some credible evidence that she reasonably believed that her actions were necessary to avoid an imminent harm or evil. See HRS § 701-115 (2014) cmt.; HRS § 703-300 (2014) ("'Believes' means reasonably believes."). Here, the undisputed evidence shows that a notice was posted on Russell's tent informing her that she had 24 hours to remove the tent before it would be impounded. Russell admitted that she "got notice" on the day the removal notice was posted, but did not remove the tent. The conduct for which Russell was charged occurred the day after Russell became aware of the removal notice. Russell was arrested several hours after her initial encounter with Morikawa and the police. Russell testified that by that time, her property was safe, she did not resist arrest, and she handed her

property to her "comrades." Given these circumstances, Russell failed to produce sufficient evidence of an imminent harm or evil to justify a choice-of-evils defense.

C.

Russell contends that the Circuit Court abused its discretion in denying Russell's motion for a mistrial, which was based on alleged prosecutorial misconduct for remarks made by the prosecutor during closing argument. We disagree.

1.

During closing argument, Russell's counsel questioned Morikawa's credibility by maintaining that she was evasive and uncomfortable in responding to questions. During rebuttal, the prosecutor defended Morikawa's credibility and attacked Russell's credibility. Russell claims that the following highlighted remarks by the prosecutor were improper:

> [Prosecutor]: Ladies and gentlemen, the testimony of . . . Trish Morikawa was addressed by defense counsel. **Trish Morikawa testified candidly and her demeanor remained the same throughout her testimony**. The State questioned her. **She was very candid with the court telling -- uh, speaking as to the events that took place described in the video**.
>
> **And in cross-examination she was . . . answering defense counsel's questions. However, if you remember defendant Russell's answers to the State's questions, they are very different than the answers that she gave to her defense counsel. If you remember, uh, the defense counsel would ask, uh -- would ask a question and she would -- she would answer it very sincere. However, when the State -- the State asked her questions, she became argumentative, combative**.
>
> Simple yes or no questions. She wouldn't answer them. For instance, when the State asked her, uh, isn't it true that you refused to get out of the tent, she says I was protecting my property. When I asked her -- when the State asked her again, isn't it true that you didn't leave the tent or you didn't ask for help to remove the apparatus, she says I was protecting my property. It was only after judge told her to answer the question that she finally said yes.
>
> Turn to your credibility instruction on whether to assess witness credibility on Page 9 of the jury instructions. It states in the second -- in the second sentence it states "In evaluating the weight and credibility of a witness' testimony, you may consider the witness' appearance, demeanor; the witness' manner of testifying; the frankness, the . . . witness' intelligence; the witness' candor or frankness or lack thereof; the witness' interest, if any, in the result of this case."

11

Let's go through this a little bit. **Uh, when you think about Catherine Russell, the defendant, what's her interest in the result of this case? She's the defendant**.

[Russell's counsel]: Objection, Your Honor. I believe if we could approach.

THE COURT: No, there's no need.

[Russell's counsel]: Okay. This goes against the instruction that there is to be no comment made on the defendant's right to testify.

THE COURT: No, that's --

[Russell's counsel]: That should not be used as --

THE COURT: Okay.

[Russell's counsel]: -- something to evaluate credibility, Your Honor.

THE COURT: Okay. Um, that's, um -- that objection is overruled.

[Prosecutor]: **Think about the defendant's result. They have the biggest result in this case. Think about the result that Trish Morikawa and the City and County of Honolulu employees enforcing the enforcing crew, what are their interests in the result of the case? Their interest was defendants obstructed our operations so we will testify**.

Witness' candor -- uh, witness' intelligence, the defendant Russell --

[Russell's counsel]: Your Honor, I'm sorry. I must object again. If I could approach?

THE COURT: You may not.

[Russell's counsel]: Okay. I'm referring to Page 15 of the jury instructions as the basis for my objection.

THE COURT: Please continue. The objection's overruled.

[Prosecutor]: Ladies and gentlemen, if I could please finish up here with the credibility instruction, the witness' appearance and demeanor; manner of testifying, defendant Russell when she was testifying . . . her defense attorney[] asked her do you have any tattoos or do you have a tattoo of Abraham Lincoln. The judge sustained the objection which means she's not allowed to answer the question. However, shortly thereafter I -- the State of Hawaii placed on the record that she rolled her shirt to the side --

. . . .

She turned -- she pulled her strap to the side and -- to show her tattoo because she wanted that information in

12

> after the judge had already kept it out. She did not follow the instructions of the court that day. She did not follow the instructions of the governmental employees on September 26, 2012.

2.

Russell contends that the prosecutor engaged in misconduct by personally vouching for the credibility of the government's witnesses. This claim is without merit. The prosecutor did not express an improper personal opinion about the credibility of Morikawa and other State witnesses, but rather argued that they were credible based on factors such as demeanor while testifying, responses to questions, and lack of personal interest in the outcome of the case. These are all legitimate bases for arguing that a witness was credible.

3.

Citing State v. Basham, 132 Hawai'i 97, 319 P.3d 1105 (2014), which was decided after the trial in this case, Russell argues that the prosecutor made an improper generic argument that Russell was not credible because she had an interest in the result of the case. Prior to Basham, the long established rule in Hawai'i was that it was permissible for the prosecutor to argue that a defendant's interest in the outcome of the case gave him or her a motive to lie. In State v. Apilando, 79 Hawai'i 128, 142, 900 P.2d 135, 149 (1995), the defendant Apilando argued that it was improper for the prosecutor to attack Apilando's credibility in closing argument by stating that because Apilando "had the highest stake in the outcome of the case, he had the greatest motive to lie." The Hawai'i Supreme Court rejected Apilando's argument, reasoning as follows:

> This court has held that, when a defendant takes the stand to testify, his or her credibility can be tested in the same manner as any other witness. Apilando testified on his own behalf, and, by so doing, subjected himself to attacks on his credibility. We believe the prosecution's comments regarding Apilando's interest in the case were not improper.

Apilando, 79 Hawai'i at 142, 900 P.2d at 149 (emphasis added; citations omitted).

13

However, twenty years later, the supreme court in Basham held that

> it is improper for a prosecutor in summation to make generic arguments regarding credibility based solely upon the status of a defendant. Accordingly, a prosecutor may not argue during closing argument that defendants, because they are defendants, have no reason to tell the truth or have the "greatest motive to lie." Apilando, 79 Hawai'i at 142, 900 P.2d at 149.

Basham, 132 Hawai'i at 118, 319 P.3d at 1126 (one citation omitted). We conclude that Basham overrules Apilando, at least with respect to Apilando's holding that it was not improper for the prosecutor to argue that because Apilando "had the highest stake in the outcome of the case, he had the greatest motive to lie." State v. Magbulos, No. CAAP-14-0001337, 2018 WL 949728, at *13 (Hawai'i App. Feb. 20, 2018).

The supreme court majority in Basham did not have to address the issue of the prospective/retrospective application of Basham's "generic argument" holding because it had already decided to vacate Basham's conviction before sua sponte addressing the generic argument issue. Because Basham overturned long-standing precedent which permitted a prosecutor to argue in closing that the defendant had the greatest motive to lie due to the defendant's interest in the outcome of the case, we hold that Basham's "generic argument" holding only applies prospectively to trials occurring after the Basham decision was issued. See State v. Cabagbag, 127 Hawai'i 302, 315-18, 227 P.3d 1027, 1040-43 (2012) (applying decision which overturned existing precedent prospectively and affirming defendant's conviction based on precedent in effect when he was tried); State v. Auld, 136 Hawai'i 244, 255-57, 361 P.3d 471, 482-84 (2015) (applying new rule prospectively only to events occurring after the decision); State v. Jess, 117 Hawai'i 381, 400-04, 184 P.3d 133, 152-56 (2008). Here, the prosecutor's argument that Russell (and Walsh) had the "biggest" interest in the outcome or result of the case was permissible under supreme court precedent existing at the

14

time the argument was made.  Accordingly, we conclude that this argument was not improper.

### 4.

Based on the foregoing, the prosecutor's comments challenged by Russell did not constitute prosecutorial misconduct.  Accordingly, the Circuit Court did not abuse its discretion in denying Russell's motion for mistrial.

### D.

Having addressed Russell's points of error on appeal, we conclude that she is not entitled to relief, and we affirm her conviction.

### II.

We now turn to Walsh's points of error on appeal.

### A.

Prior to trial, Russell filed a motion to dismiss her complaint, arguing that HRS § 710-1010, as applied the her, was an unconstitutional abridgment of her First Amendment rights.  Walsh joined in Russell's motion to dismiss.  The Circuit Court denied the motion as to both Russell and Walsh.  On appeal, Walsh argues that the Circuit Court erred in denying the motion to dismiss.  We disagree.

Walsh contends that the State adduced no testimony at the hearing.  However, the State proffered the statements of Morikawa in opposing the motion; the Circuit Court admitted a video recording, which was played at the hearing, of the events on the day in question that included audio of what Morikawa had said that day; and the Circuit Court accepted the video recording (including the audio of what Morikawa had said) as a representation of how Morikawa would have testified if called at the hearing.  Walsh provides no authority that the Circuit Court could only consider live testimony at the hearing in ruling on the motion to dismiss.[1]

---

[1] Walsh also appears to suggest that the Circuit Court erred in not permitting him to testify.  However, Russell testified at the hearing

(continued...)

With respect to the substance of the Circuit Court's ruling, legislative enactments are presumptively constitutional, "and a party challenging the statute has the burden of showing unconstitutionality beyond a reasonable doubt." State v. Mueller, 66 Haw. 616, 626-27, 671 P.2d 1351, 1358 (1983). In addressing a similar challenge to the constitutionality of HRS § 710-7010, this court in Jim cited the following test:

> a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

Jim, 105 Hawai'i at 333, 97 P.3d at 409 (quoting United States v. O'Brien, 391 U.S. 367, 377 (1968). We concluded in Jim that HRS § 710-1010, as applied to the defendants' conduct of obstructing county workers, who were attempting to locate an unauthorized water line, to protest county actions on Hawaiian home lands, did not violate their First Amendment rights. Id. at 334, 97 P.3d at 410.

Similarly, in this case, the application of HRS § 710-1010(1)(a) to Walsh's conduct in obstructing the City's enforcement of the Stored Property Ordinance did not violate the First Amendment. HRS § 710-1010 is within the constitutional power of the State government to enact; it furthers an important governmental interest of ensuring that government operations are conducted and carried out without intentional interference; this governmental interest is unrelated to the suppression of free expression; and the incidental restriction on Walsh's alleged First Amendment freedoms was no greater than that essential to

_____

1/ (...continued)
regarding the events on the day in question. When Walsh indicated he also wanted to testify, the Circuit Court asked for an offer of proof. Walsh's offer of proof was that his testimony regarding the events on the day of the charged incident would be consistent with Russell's testimony. The State stipulated to this offer of proof, which the Circuit Court accepted. The Circuit Court declined to hear testimony by Walsh about his conduct on other days besides the day of the charged incident on the ground that such testimony was not relevant to the motion to dismiss. Walsh does not demonstrate that this limitation was in error.

further the government's interest. Indeed, in this case, no attempt was made to forcibly remove Walsh from the tent or to preclude his "protest" activities. Moreover, other persons present on the day in question, who voiced their opposition to the Stored Property Ordinance without chaining themselves together or obstructing the removal of impounded property, were not arrested for violating HRS § 710-1010. We conclude that the Circuit Court properly denied the motion to dismiss.

B.

Walsh contends that the Circuit Court erred in preventing him from introducing relevant state-of-mind evidence at trial. During trial, the following took place:

> Q. [By Walsh's counsel]: <u>Okay. Now when you first sat in the tent, was it your -- your desire or your intention to obstruct any government operations</u>?
>
> [Prosecutor]: <u>Objection, Your Honor</u>.
>
> THE COURT: <u>Sustained</u>.
>
> Q. BY [Walsh's counsel]: Was it your goal to stifle Trish Morikawa?
>
> A. No.
>
> . . . .
>
> Q. So when Ms. Morikawa told you to move and you didn't, was that because you wanted to stifle Ms. Morikawa still?
>
> [Prosecutor]: Objection, Your Honor.
>
> THE COURT: Sustained.
>
> Q. BY [Walsh's counsel]: What was your primary concern as you were sitting in the tent with Ms. Morikawa standing --
>
> THE COURT: Would -- would the -- would the counsel for all sides join me at this point.
>
> . . . .
>
> (Bench conference begun.)
>
> THE COURT: I -- I have a concern now. What were you thinking and what was your intent, uh, at that time? Um, I note that the intents which have been described would not provide a defense. And I think we're getting to the point where, um, he's beyond describing his story and is now talking about a movement.

17

And so he is, you know -- I'm not otherwise restricting him, and I think you've covered as much as is appropriate for state of mind because when you get back to that, we get into issues that are not involved here. This is a criminal prosecution for obstructing government operations. There are a certain number of elements to it. The State has to prove that if there are any over-arching rights, then they don't -- they don't compete with the facts. They trump the facts of the case.

So if you have some case that you wish to prove for some constitutional violation, I guess you're free to do that. And I think you're pursuing·that in federal court now. However, let's get to the facts of the case. If there are other matters that you want to bring up that I'm not thinking about, that's a possibility too, but I think we should focus at this point.

[Walsh's counsel]: <u>Your Honor, I'll just note that the reason is because obstructing governmental operations requires an intentional state of mind. And since it's a specific intent crime, he has to have intended to commit the crime</u>.

THE COURT: No.

[Walsh's counsel]: It's not a knowingly or a recklessly.

THE COURT: Well, yeah. No. That's -- that's true. And he's already denied that he wanted to, so <u>let's move on</u> because, uh, whether or not he has a constitutional level, uh, feeling for what he's doing, um, after a point he's expressed his intention. <u>Let's move on.</u>

[Walsh's counsel]: Sure.

THE COURT: Okay.

[Walsh's counsel]: Thank you.

(Emphases added.)

We agree with Walsh's argument that the Circuit Court erred in "not allowing questions regarding Walsh's intent, effectively depriving [Walsh of] the opportunity to present a complete defense." Essential to the State's establishing that Walsh committed the charged crime was proof that he acted with the requisite criminal intent. The State was required to prove that Walsh acted intentionally to obstruct, impair, or hinder the performance of a governmental function by a public servant. The question by Walsh's counsel regarding whether it was Walsh's intent to obstruct any government operations was directly

18

relevant to whether Walsh acted with the requisite mens rea to commit the charged offense. The Circuit Court erred in sustaining the prosecutor's objection to this question.

The record also shows that the Circuit Court dissuaded Walsh's counsel from asking additional questions regarding whether Walsh possessed the requisite criminal intent, by calling counsel to a bench conference and telling him to "move on." Indeed, after the bench conference, Walsh's counsel did not ask any questions directly related to Walsh's intent in refusing to leave Russell's tent, but only asked Walsh whether he wanted "to get arrested" on the day in question, to which Walsh replied "No."

We conclude that the Circuit Court erred in unduly restricting Walsh's counsel ability to question Walsh about whether he possessed the requisite criminal intent for the charged offense. We also conclude that we cannot say this error was harmless beyond a reasonable doubt. Proof that Walsh acted with the requisite criminal intent was essential to the State's establishing his guilt. Walsh was entitled to defend against the charge by presenting evidence that he did not act with the requisite criminal intent. The Circuit Court's rulings deprived Walsh of a fair opportunity to present such a defense. We therefore vacate Walsh's conviction.

C.

Walsh argues that there was insufficient evidence to show that Walsh obstructed a "public servant acting under color of the public servant's official authority." HRS § 710-1010(1)(a). We disagree.

The State presented evidence that Morikawa, Corporal Nakano, and other members of the enforcement crew who arrived at the scene were City employees who were there to enforce the Stored Property Ordinance. The State also presented evidence of the various actions taken by City workers to implement and enforce the requirements of the Stored Property Ordinance and how Walsh's actions obstructed, hindered, and impeded their ability

19

to carry out their duties. When viewed in the light most favorable to the State, we conclude that the State presented substantial evidence that Morikawa and other members of the enforcement crew were "public servant[s] acting under color of [their] official authority." See HRS § 710-1010(1)(a).

Walsh cites no authority to support his claims that to prove this element, the State was required to produce an official to testify that the City employees were acting under his or her orders or a witness to testify that the City employees were specifically authorized to enforce the Stored Property Ordinance. We therefore reject these claims.

Because we reject Walsh's contention that there was insufficient evidence to support his conviction, we also reject his claim that his retrial is barred by double jeopardy.

D.

In light of our decision to vacate Walsh's conviction, we need not address the remaining points of error raised by Walsh on appeal.

CONCLUSION

We affirm the Judgment against Russell. We vacate the Judgment against Walsh and remand Walsh's case for a new trial.

DATED: Honolulu, Hawai'i, February 22, 2018.

On the briefs:

Jon N. Ikenaga
Deputy Public Defender
for Defendant-Appellant
CATHERINE C. RUSSELL

Andrew T. Park
(Urbanc Willard Park & Kim LLLC)
for Defendant-Appellant
BLADE MICHAEL WALSH

Sonja P. McCullen (CAAP-13-5434)
Brian R. Vincent (CAAP-13-5679)
Deputy Prosecuting Attorneys
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*

Chief Judge

*[signature]*

Associate Judge

*[signature]*

Associate Judge

20